The Borough of Scottdale, a municipal corporation *v.* National Cable Television Corporation and Jay L. Sedwick, Appellants.

Argued October 27, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Yolanda G. Barco,* with her *George J. Barco,* and *Barco and Barco,* for appellants.

*Joseph A. Hudock,* for appellee.

OPINION BY JUDGE BLATT, February 7, 1977:

The Borough of Scottdale filed a complaint in equity with the Court of Common Pleas of Westmoreland County requesting the court to enjoin the National Cable Television Corporation (National) from increasing its rates for cable television service without the prior approval of the Borough. The lower court granted a permanent injunction and National has appealed.

On January 9, 1967, the Borough adopted Ordinance No. 496, entitled as follows:

AN ORDINANCE GRANTING TO NATIONAL CABLE TELEVISION CORPORATION, AND ITS ASSIGNS, THE NONEXCLUSIVE RIGHT AND PERMISSION TO ERECT, INSTALL, MAINTAIN AND OPERATE A COMMUNITY ANTENNA TELEVISION SYSTEM AND OTHER CLOSED CIRCUIT FACILITIES AND ADDITIONS THERETO, IN, UNDER, OVER, ALONG, ACROSS AND UPON THE STREETS, SIDEWALKS, ALLEYS, BRIDGES, ROADS AND HIGHWAYS AND OTHER PUBLIC PLACES IN THE BOROUGH OF SCOTTDALE, PENNSYLVANIA, AND SUBSEQUENT ANNEXATIONS THERETO, INCLUDING IN CONNECTION THEREWITH, THE RIGHT AND PERMISSION TO ERECT,

INSTALL AND MAINTAIN POLES AND TO INSTALL, AT-
TACH AND MAINTAIN WIRES, CABLES, APPLIANCES
AND OTHER FACILITIES TO SUCH POLES AND TO EX-
ISTING UTILITY POLES, FOR THE PURPOSE OF TRANS-
MISSION AND DISTRIBUTION OF TELEVISION, RADIO
AND RELATED ELECTRONIC SIGNALS TO PROVIDE RE-
CEPTION SERVICE FOR THE SAME TO THE MEMBERS
OF THE PUBLIC DESIRING SUCH SERVICE IN THE BOR-
OUGH, AND FOR OTHER PURPOSES, FOR A PERIOD OF
FIFTEEN (15) YEARS, IMPOSING CONDITIONS, REQUIR-
ING INSURANCE COVERAGES, REPEALING ALL ORDI-
NANCES OR PARTS OF ORDINANCES INCONSISTENT
THEREWITH, AND PROVIDING THAT THIS ORDINANCE
SHALL TAKE EFFECT IMMEDIATELY UPON ITS ENACT-
MENT.

The ordinance provided that the right and permission to install and operate the cable television system was granted ''in consideration of the faithful performance and observance of the conditions and reservations hereinafter specified,'' which included, among others, the following:

(1) National shall locate, install and maintain its equipment so as not to endanger or interfere with persons and property, or to unnecessarily obstruct the use of the public ways.

(2) Installation and maintenance of the system shall be in accordance with the provisions of the National Electrical Safety Code.

(3) National shall carry insurance against personal or property loss, damage or injury.

(4) National shall provide 12 channels of television reception service.

(5) National shall provide one free service outlet to a variety of public, parochial and municipal buildings.

(6) National shall provide service to subscribers at fixed charges as set forth in the or-

dinance and "[t]*here shall be no increase or revision in the said service charges without the prior approval of the Borough.*" (Emphasis added.).

Upon adoption of this ordinance by the Borough, National promptly instituted cable television service within the Borough. In 1973 it requested Borough approval for an increase in service charges, and the requested increase was denied twice that year. Another request for an increase was denied in 1975. Thereupon National, without any Borough approval, notified its customers that it was raising its service charges. It was then that the Borough filed its injunction action.

National has accurately framed the issue here as follows:

Where a borough by ordinance grants a cable television company permission to install its CATV system facilities over the public ways, does the borough have the legal authority to regulate charges for CATV service or to require prior approval for any service charge increase, by virtue of a provision in the ordinance that there shall be no increase in service charges without the prior approval of the borough?

The lower court, in granting the injunction, answered this issue in the affirmative.

In making our determination here, we must begin with Sections 1202(17) and (74) of The Borough Code[1] (Code), 53 P.S. §§46202(17) and (74), which provide as follows:

The powers of the borough shall be vested in the corporate authorities. *Among the specific*

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §45101 et seq.

*powers of the borough shall be the following,* and in the exercise of any of such powers involving the enactment of any ordinance or the making of any regulation, restriction or prohibition, the borough may provide for the enforcement thereof and may prescribe penalties for the violation thereof or for the failure to conform thereto:

. . . .

(17) Street and sewer regulations; obstructions. *To regulate the streets, sewers, public squares, common ground, sidewalks, curbs, gutters, culverts and drains,* and the heights, grades, widths, slopes and construction thereof; *and to prohibit the erection or construction of* any building or other *obstruction to the convenient use of the same.*

. . . .

(74) General powers. *To make and adopt all such ordinances,* bylaws, rules and regulations *not inconsistent with or restrained by the Constitution and laws of this Commonwealth,* as may be expedient or *necessary for the proper management, care and control of the borough* and its finances, *and the maintenance of peace, good government, safety and welfare of the borough and its trade, commerce and manufactures.* (Emphasis added.)

Section 1401 of the Code, 53 P.S. §46401 provides as follows:

Each borough may make contracts for lawful purposes and for the purposes of carrying into execution the provisions of this act and laws of the Commonwealth.

We are, of course, well aware that it has long been the law of this Commonwealth that

> [t]he streets and alleys of cities, towns
> and boroughs are under the control and direc-
> tion of these municipalities, and they have all
> the power over them that can lawfully exist.

*Wood v. McGrath*, 150 Pa. 451, 456, 24 A. 682 (1892).
It is clear, therefore, that the Code grants authority
to the Borough to regulate by ordinance the use of its
streets and ways by a cable television company. *Cf.
Farrell v. Altoona CATV Corp.*, 419 Pa. 391, 214 A.2d
231 (1965).

In *Philadelphia v. Holmes Electric Protective Co.*,
335 Pa. 273, 6 A.2d 884 (1939), the City of Philadel-
phia, by ordinance, had granted permission to the
defendant corporation to place wires under the streets
of the City for use in its business operations, and the
ordinance further provided that the corporation would
pay two per cent of its yearly gross receipts to the
City. The City filed an action in assumpsit to recover
sums allegedly due under the ordinance and our Su-
preme Court, in affirming the lower court's money
judgment in favor of the City, held as follows:

> As a consideration for permitting it to op-
> erate underground wires in the streets the City
> could exact whatever payments in the nature of
> rentals it might deem proper. . . .
>
> . . . .
>
> But the consideration exacted in the ordi-
> nance is neither a tax nor a license fee; it is in
> the nature of an annual rental to be paid for the
> privilege of the use of space under the streets.
> . . . *When such an ordinance is accepted and act-
> ed on by the grantee of the privilege the corpo-
> ration becomes contractually bound* to pay the
> consideration and *perform the terms and condi-
> tions specified in the ordinance,* and the con-
> tract thereby formed has the same legal status
> as any other contract. . . . The obligations of

such a contract is protected by the provision of both the State and Federal constitutions against impairment. . . . (Emphasis added, citations omitted.)

*Philadelphia v. Holmes Electric Protective Co.*, 335 Pa. at 277-279, 6 A.2d at 886-888.

We believe that *Philadelphia v. Holmes Electric Protective Co., supra,* controls the instant case and affirmatively answers the issue posed here of whether or not the Borough can impose conditions upon the use of the public ways by a cable television company.

We note that the courts of Illinois and Missouri have each faced the same question as is presented here, and both have ruled in favor of the municipality's power to regulate the use of its public ways and to impose conditions upon such use. In *Illinois Broadcasting Co. v. City of Decatur*, 96 Ill. App. 2d 454, 238 N.E. 2d 261 (1968), the city had passed a "franchise ordinance"[2] which granted to the company the nonexclusive right

---

[2] A grant to a company of the right to use the public ways is generally termed a franchise, license or permit, and to protect the rights of the municipality, the right to regulate such use is generally retained by the grantor. 12 McQuillin Mun. Corp. (3rd Ed.) §34.01. Although it is not essential to our decision here to categorize the Borough's ordinance as a "franchise," we believe that a franchise is granted where, as here, "a special privilege [is] conferred by government upon an individual which does not belong to citizens generally by common right." *Aberdeen Cable TV Service, Inc. v. City of Aberdeen*, 85 S.D. 57, 62, 176 N.W. 2d 738, 740 (1970).

The grant by a city to a person, firm or corporation of the right to construct a city-wide system of towers, poles, cables, wires, and other apparatus in, along and over its streets and other public ways and to operate such systems for the profits of the grantee is clearly a franchise, for it is the grant of a right not held by all persons in common and which may be granted only by the act of the sovereign or its authorized agent. A franchise need not be exclusive. (Citation omitted.)

to construct, erect, operate and maintain upon, along, across, above, over and under the streets, alleys and public ways, poles, wires, cables, conduits and other fixtures and to use the same for the purpose of transmitting television signals and 'especially for the conduct of a community antenna television system, for the reception, sale, and distribution of television signals.' The right granted is 'nonexclusive,' and the city reserves the right to grant similar rights to others.

*Illinois Broadcasting Co., supra,* 96 Ill. App. 2d at 456, 238 N.E. 2d at 262-263.

The ordinance then imposed many conditions similar to those imposed by the Borough's ordinance, including scheduled rates, which could only be increased "with permission of the city." *Illinois Broadcasting Co., supra,* 96 Ill. App. 2d at 458, 238 N.E. 2d at 263. The Illinois Court held that the city's power to enfranchise the company was derived from its statutory authority to regulate the use of the public ways. The Illinois Court then reasoned as follows:

A business whose product must travel by wire from house to house has to first obtain some type of permission from the city concerned, as wires cannot be strung from house to house without in some way making use of the streets and alleys—'over, above, beneath and across.' As we have seen, the franchise ordinance circumscribes with particularity this use, to the end of incurring a minimum of inconvenience to the public and a maximum of safety. If this is done and the use is reasonable,

*Kornegay v. City of Raleigh,* 269 N.C. 155, 161, 152 S.E. 2d 186, 190 (1967).

We, therefore, believe that the reasoning of *Illinois Broadcasting Co., supra,* is applicable here.

private use of streets is permissible. . . . Certainly the use here contemplated meets this test. If this is so then Decatur has the right to attach—but not impose or exact—conditions to such use, though unrelated to it, leaving it up to the person seeking the grant to either accept or reject them. Cast in this mold the ordinance becomes effective only upon acceptance.[3] Rejection, and the ordinance is a dead letter. We see nothing wrong in the city saying in effect: You may use our streets for such and such a purpose as such purpose is reasonable and in the public interest yet before we will grant you this, you must in turn agree to certain conditions collateral to the specific use you desire.

That some of the conditions present here in the franchise ordinance and indubitably in the specifications ordinance do constitute regulation unrelated to use of the streets is to state the obvious. A quick perusal discloses that a great many are concerned solely with CATV aspects. However, these conditions are self-imposed. They are not imposed by Decatur. If General agrees to be so regulated who can complain? If General accepts a condition to pay a given sum who cares, and if General pays, as we assume it will, who is hurt? If General discovers later on that some of the conditions it agreed to are onerous, it can assuage itself with the thought that surcease is but fifteen years away—a condition, too, it agreed to. (Citation omitted, footnote ours.)

---

[3] The City of Decatur required that the company there file a written acceptance of the ordinance, which it did. We believe that National manifested its acceptance of the Borough's ordinance by its actions in constructing, maintaining and operating the cable television system in accordance with the ordinance. *See Philadelphia v. Holmes Electric Protective Co., supra.*

396

*Illinois Broadcasting Co., supra,* 96 Ill. App. 2d at 460-461, 238 N.E. 2d at 264-265.

*Accord, Cablevision, Inc. v. City of Sedalia,* 518 S.W. 2d 48 (1974).

We are convinced by the Pennsylvania cases and those of our sister states that the Borough here has the power to impose conditions by ordinance which regulate the charges for cable television services and which require Borough approval of rate increases. We believe, of course, that the discretionary power of the Borough to approve rate increases should be exercised in good faith, *See Cablevision, Inc. v. City of Sedalia, supra; Illinois Broadcasting Co., supra,* and we note from the record that National's service charges have never been increased. We are concerned here, however, only with the authority of the Borough to impose the conditions here involved.

We, therefore, affirm the order of the lower court.

ORDER

AND Now, this 7th day of February, 1977, the order of the Court of Common Pleas of Westmoreland County is affirmed.