**UNITED STATES of America**

v.

**Herbert FINEMAN.**

**Crim. No. 77–36.**

United States District Court,
E. D. Pennsylvania.

April 1, 1977.

See also, D.C., 434 F.Supp. 197.

Alan M. Lieberman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Howard Gittis, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

The defendant, Herbert Fineman, has filed a Motion to Dismiss nine of the ten counts of the Indictment in this case. The motion raises a great many issues, all of which have been thoroughly briefed and argued,[1] but because of the desirability of prompt disposition of the motion, full discussion of every issue will not be attempted in this Memorandum. Instead, after presenting the issues which must be decided, I shall, for the most part, merely set forth my conclusions and a brief summary of the reasons, deferring further elaboration until after trial.

## I. THE FACTS ALLEGED

For purposes of disposing of this motion, the following facts, as set forth in the Indictment, must be assumed to be true:

At all pertinent times, the defendant occupied a leadership position as a member of the House of Representatives of the Commonwealth of Pennsylvania. During a portion of the relevant period, he was Minority Whip; during the balance he was Speaker of the House. One Martin Abrams was a Democratic committeeman in the City of Philadelphia, within the legislative district represented by the defendant, and within

---

1. The defendant's 123-page brief cites 123 cases and 41 statutes or other authorities. The Government's 57-page brief cites 73 cases. Both sides have filed informal supplemental briefs. Separate briefs have been filed in connection with numerous other pending motions.

the ward in which the defendant was the Democratic ward leader.

On four occasions between September 1970 and March 1973 the defendant and Abrams carried out a scheme or arrangement pursuant to which the parents of students wishing to enroll in certain graduate schools within the Commonwealth of Pennsylvania (two medical schools and a veterinary school, all of which received substantial financial support through legislative appropriations) were induced by Abrams to pay large sums of money (ranging from $11,000 to $15,000 per student) in order to influence favorable action upon their respective applications. Abrams did not tell the parents the identity of the person whose influence would thus be obtained. The defendant, through letters and otherwise, would recommend favorable action on the applications by the graduate school involved. After the student was accepted, most of the money collected by Abrams was turned over to the defendant and retained by him.

During 1976, the defendant on various occasions and in various ways sought to prevent the F.B.I. and a Federal Grand Jury from learning of the foregoing events, by successfully urging Abrams to plead the Fifth Amendment before the Grand Jury, and then, after immunity was granted, urging him to commit perjury; by causing the destruction of certain records; and by attempting to cause the destruction of other records.

## II. THE INDICTMENT

The first two counts charge violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count I charges a violation of § 1962(c), which provides:

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

Count II charges a violation of § 1962(d), conspiracy to commit the violation of Subsection (c).

Counts III, IV, and V charge mail fraud in violation of 18 U.S.C. § 1341.

Count VI charges the defendant with obstructing a criminal investigation in violation of 18 U.S.C. § 1510 on the basis of alleged attempts to hinder the F.B.I. investigation.

Counts VII, VIII, IX and X charge obstruction of justice in violation of 18 U.S.C. § 1503, relating to alleged efforts to hinder the Grand Jury. The defendant does not now seek dismissal of Count X.

## III. DISCUSSION

### A. THE RICO COUNTS.

Section 1962(c) of the RICO statute makes it a federal crime for any person associated with any "enterprise" whose activities affect interstate or foreign commerce to participate in conducting the affairs of the enterprise "through a pattern of racketeering activity." The Government's theory is that the association between the defendant and Abrams for obtaining money from the parents of would-be graduate students was an "enterprise" within the meaning of the statute; that its activities affected interstate and foreign commerce; that the four payment transactions constituted bribery or extortion, and thus were a "pattern of racketeering activity;" and that the coverup efforts three years later also constituted a "pattern of racketeering activity."

The defendant argues that the facts alleged do not bring this case within the literal meaning of the statute and that, in any event, it is clear that Congress, in enacting RICO, did not intend to enlarge the reach of federal criminal law so as to include activities of this kind.

#### 1. *Definition of "Enterprise."*

The defendant argues that, notwithstanding the very broad definition of "enterprise" contained in § 1961(4) ("'enterprise'

includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity") the Congressional intent was to limit it to enterprises which are both (a) legitimate and (b) characterized by continuity and structure, rendering them recognizable as businesses.

■ The former argument is foreclosed by such cases as *U. S. v. Cappetto,* 502 F.2d 1351 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), and *U. S. v. Parness,* 503 F.2d 430 (2d Cir. 1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975), which hold that unlawful as well as lawful businesses are included within the "enterprise" concept embodied in RICO.

■ As for the second argument, I am persuaded that the statute does not require any particular structure or badge of recognizability, other than that the individuals be "associated in fact." If a gambling enterprise qualifies, so should an enterprise which systematically collects bribes. The statute does not impose a continuity requirement, except to the extent necessary to show a "pattern of racketeering activity." Assuming, nevertheless, that the defendant is correct in asserting that sporadic, isolated, joint acts are not sufficient to denote an existing, ongoing "enterprise," I am not prepared to hold as a matter of law that four transactions involving some $56,000, over a 2½-year period, are insufficient. This would seem to be a mixed question of fact and law, which can best be resolved on the basis of evidence to be presented at trial.

### 2. *Pattern of Racketeering Activity.*

Section 1961(1) defines "racketeering activity" as including "an act or threat involving . . . bribery, [or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year, . . . [and] any act which is indictable under any of the following provisions of title 18, United States Code: [§ 1341 (mail fraud), § 1503 (obstruction of

justice), § 1510 (obstruction of criminal investigation)] . . . ." Section 1961(5) defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."

The defendant argues that the facts alleged do not constitute bribery or extortion and that in any event no such offense is "chargeable under state law;" that the facts alleged do not constitute mail fraud; and that the facts alleged demonstrate that the asserted obstruction of justice activities were not part of the "enterprise."

Since the mail fraud and obstruction charges are also asserted as separate substantive counts of the Indictment, they will be discussed separately (see Parts B and C below). The RICO counts may not be dismissed so long as any of the predicate offenses are sufficiently alleged as constituting a pattern of racketeering activity within the statutory meaning.

In essence, the defendant contends that, since writing letters of recommendation sponsoring the admission of students to graduate schools is not within the official duties of the Speaker, Minority Whip, or any other member of the House of Representatives of the General Assembly of the Commonwealth of Pennsylvania, receipt of money to prompt such recommendations does not constitute bribery under Pennsylvania law; and that, since the payments were willingly, even cheerfully, given, there can be no extortion under Pennsylvania law.

Defendant's challenge to the extortion predicate is, on the present record, merely an assertion that the defendant is not guilty, and does not provide a basis for dismissing the Indictment. Apparently recognizing this problem, the defendant seeks a preliminary evidentiary hearing to test his hypothesis that no evidence of extortion was presented to the Grand Jury. This motion will be discussed below (see Part D).

**194**

■ At the times pertinent to this case, the Pennsylvania Penal Code contained a provision, 18 P.S. § 4303, making it a crime for a member of the General Assembly to accept or receive a bribe which was given or promised "in order to obtain or influence the vote, opinion, verdict, award, judgment, decree, or behavior of any member of the General Assembly . . . in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them . . . ." The Government concedes that this statute "probably" did not cover the activities of this defendant, since the persons paying the money did so to obtain favorable recommendations, rather than to influence Mr. Fineman's actions as a member of the legislature. The argument can be made, of course, that since the defendant was in a position to exert strong, even decisive, impact upon legislative action appropriating funds to the graduate schools in question, his receipt of payments under the circumstances might very well have had some actual influence upon his activities as a legislator. Nevertheless, because of the peculiar structure of the Penal Code provision, it would seem that the motive of the payor, rather than the actual result, are crucial to the application of this statute. It is reasonable to suppose that a person paying money to a powerful legislative leader might well assume that successful completion of the transaction would have some effect upon his legislative actions. It may be, therefore, that the Government's concession is, as an abstract proposition, overly generous. The fact remains, however, that this Indictment does not charge that the payments were made in order to influence the defendant's actions with respect to anything pending before the legislature, and the Government's concession will therefore be accepted at face value.[2] Be that as it

may, I am satisfied that the activities alleged would constitute bribery at common law, and would have been indictable as such. 18 P.S. § 5101 expressly preserved common law crimes during the period pertinent to this Indictment. The Pennsylvania Supreme Court has made it clear that official corruption which is not squarely within the reach of 18 P.S. § 4303 does constitute common law bribery. *Commonwealth v. Silverstein,* 445 Pa. 497, 507–08, 284 A.2d 773, 778 (1971) (Jones, J. concurring and dissenting). *Cf. U. S. v. Dansker,* 537 F.2d 40 (3d Cir. 1976).

In addition to the cited cases, I note that there is considerable merit to the Government's argument that the new Pennsylvania Crimes Code contains, in 18 P.S.A. § 4701, a broader definition of statutory bribery (which would concededly cover defendant's alleged activities) which was intended merely to codify existing law by including both statutory and common law bribery (the new Crimes Code having abolished common law crimes in Pennsylvania, effective in June of 1973). There is no suggestion in the legislative history of that section that the new Code was intended to add anything to the law of bribery in Pennsylvania.

■ The defendant argues, further, that the alleged bribery and extortion activities cannot constitute predicate offenses for a RICO charge because they are no longer "chargeable" under Pennsylvania law, the statute of limitations having expired. I perceive no merit in this argument. The RICO statute is concerned with defining the predicate offenses. An offense which, when committed, would have been indictable under Pennsylvania law is within the statutory definition. Any other construction would render the definition of "pattern" essentially meaningless, and would

2. The purpose of the payments is set forth in the Indictment as "to influence the admission process of the schools by misuse of public office by defendant" (Paragraph 6(a)) and "for the exertion of defendant HERBERT FINEMAN'S influence obtained from public office to facilitate their children's acceptance to postgraduate professional schools" (Paragraph 6(b)). The "pattern of racketeering activity" is described in the Indictment as including the unlawful, willful and knowing receipt of "an undue reward . . . to influence his behavior as a public official, to corruptly use the power of his office, and to act contrary to his duty as a public official" (Paragraph 7 (c), (e), (h), (1)).

render state statutes of limitation paramount over the federal limitations provisions. I therefore deem it unnecessary to consider whether prosecution for the state offenses would have been time-barred as of the date of the federal Indictment.

### 3. *Impact on Interstate Commerce.*

■ Contrary to defendant's assertions, I have concluded that the Indictment sufficiently alleges the requisite effects upon interstate commerce. Payments were made interstate; at least one individual traveled interstate in order to make a payment; the graduate schools themselves are clearly involved in interstate commerce; the admissions decisions had impact on persons in several states; and at least one student withdrew from a foreign medical school in order to enroll in a Pennsylvania medical school pursuant to the alleged payoff arrangement. While the impact on interstate commerce may have been minimal, it is sufficient to withstand a motion to dismiss the Indictment.

### B. THE MAIL FRAUD COUNTS

■ Defendant contends that the "scheme or artifice to defraud" which is an essential element of mail fraud under 18 U.S.C. § 1341 is limited to schemes involving or having the potential of pecuniary loss, or at least a loss measurable in pecuniary terms. Since the Indictment in the present case alleges only that the people of Pennsylvania would have been and were defrauded by being denied the faithful performance of his duties by the defendant, the Indictment is insufficient. To accept this argument, it would be necessary to reject a number of appellate precedents to the contrary: *U. S. v. George*, 477 F.2d 508 (7th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61 (1973); *U. S. v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). *See also Shushan v. U. S.*, 117 F.2d 110, 115 (5th Cir.), *cert. denied*, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); *U. S. v. Dixon*, 536 F.2d 1388 (2d Cir. 1976). The defendant argues that, in some of these appellate decisions, the holding that corruption of a public official is "fraud" within the meaning of the mail fraud statute was merely *dictum,* since there actually was pecuniary loss; and that as to the remaining cases, the holding is based upon faulty analysis of earlier cases. Unless and until the Third Circuit Court of Appeals rejects the teaching of the cited cases, I am not disposed to ignore the clear trend of appellate decisions in other circuits.

Defendant further argues that the nexus between the alleged scheme and the use of the mails is insufficiently pleaded. The Indictment clearly specifies certain mailings made or caused to be made by the defendant in the execution of the alleged scheme. In my judgment there is no merit to the defendant's argument on this point.

### C. THE OBSTRUCTION COUNTS

■ Here again, many of the defendant's arguments suggest merely that the Government will be unable to prove its allegations. The defendant's motion for a preliminary hearing to test the sufficiency of the Government's proofs will be disposed of in Part D below.

The defendant does, however, raise two issues which can be addressed on the present record. The first is that the Indictment is inherently self-contradictory, since the Government asserts that one of the purposes of the "enterprise" consisting of the defendant and Abrams was to obstruct justice, whereas the substantive obstruction counts seem to assert that Abrams was the "victim" of the defendant's efforts to have him withhold information and commit perjury. The second is that it is simply too far-fetched to suppose that the bribery "enterprise" conducted between September 1970 and March 1973 really contemplated the obstruction of the investigation and prosecution which began in 1976.

The Government concedes that one of the charged acts of obstruction of justice did not occur until after Abrams had become a cooperative witness for the Government, and therefore could not be deemed a part of the alleged "enterprise." I am persuaded

that the same conclusion necessarily applies to every instance of alleged obstruction in which only the defendant and Abrams were involved. In using obstruction of justice as a predicate offense for the RICO charges, the Government is applying the statutory language as follows: The affairs of the enterprise consisting of Abrams and the defendant were conducted through a pattern of [acts of obstruction of justice]. In that context, I am persuaded that, in order to constitute conduct of the affairs of the enterprise, the obstruction of justice activities must involve persons who are not members of the enterprise itself.

It follows that Subparagraphs (n) and (o) of Paragraph 7 of the Indictment do not validly allege predicate offenses for purposes of the crimes charged in Counts I and II of the Indictment and, for purposes of those counts only, should be deemed stricken from the Indictment. To the extent that these subparagraphs are by reference incorporated into other counts of the Indictment, they remain valid.

### D. PRETRIAL EVIDENTIARY HEARING

■ The defendant earnestly contends that the Government has no evidence whatever to support certain of the charges contained in the Indictment. The defendant requests this Court to hold a pretrial evidentiary hearing for the purpose of ascertaining whether the Indictment is, as to those charges, defective because of the total lack of evidence before the Grand Jury. Such matters are ordinarily considered in connection with a motion for judgment of acquittal in the course of the trial. I believe it would be improper to embark upon any such inquiry in advance of trial. *See Costello v. U. S.,* 350 U.S. 359, 362–63, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

This is particularly true in the circumstances of the present case, in view of the nature of the defects asserted. Defendant contends that a hearing would disclose that the Grand Jury did not have any evidence that the parents were "pressured" to make the payments in question (hence, that ex-

tortion should not have been charged); that the defendant "pressured" Abrams to obstruct justice; or that the defendant actually caused the destruction of any records. The Grand Jury was not required to be convinced beyond a reasonable doubt as to any of these matters; it is sufficient if the evidence before the Grand Jury provided reasonable grounds for belief that all of the essential elements of the crimes charged did in fact occur. Let us suppose, for the sake of argument, that the Grand Jury heard no testimony as to whether or not the parents felt coerced into making the payments in question. Given the defendant's official position, the bare outline of the objective facts of the arrangement might lead a Grand Jury to conclude that there was a reasonable basis for the predicate charge of extortion. Even if I were to conclude, after hearing, that the Grand Jury drew an unwarranted inference from the objective facts, that would not justify dismissal of the Indictment. In short, defendant's present assertions do not really challenge the legitimacy of the Grand Jury process, but represent merely the defendant's sharp disagreement with the Grand Jury's conclusions. The trial is the proper, and so far as I am aware, the only, mechanism for resolving these issues.

### E. MOTION FOR SEVERANCE

■ Defendant has filed a motion to sever Counts VI through X (the obstruction counts) from the RICO and mail fraud counts for purposes of trial. It is argued that the Government is attempting to bolster its "weak" case on the RICO and mail fraud counts by presenting to the same jury evidence relating to the alleged coverup attempts; and to bolster its "weak" case on the obstruction counts by introducing evidence of the earlier alleged bribery activity. The defendant also argues that, if all counts are tried together, he will be deprived of his right to testify with respect to certain counts and remain silent as to other counts.

The crucial factor, in my view, is that the same alleged prejudice would occur even if

the severance motion were to be granted. That is, evidence of attempts to impede the F.B.I and Grand Jury investigations in 1976 would be admissible in support of the 1970–73 RICO and mail fraud charges. Similarly, it would be difficult indeed to try the obstruction charges without making the jury aware, at least in a general way, of the defendant's alleged connection with the matters, investigation of which was allegedly obstructed. In each of the two separate trials, the defendant would necessarily be faced with the same choice as to whether or not to testify, and if so, to what extent.

I therefore conclude that there is no merit to the motion for severance. Indeed, given the inter-relationship among all of the charges contained in this Indictment, a single trial would seem to be the only logical way to handle the matter.

## F. FURTHER COMMENTS

■ In refusing to dismiss this Indictment, I do not disagree with the defendant's assertion that the primary thrust of the RICO statute is directed toward the protection of existing businesses engaged in interstate commerce from infiltration by elements of "organized crime," from being used as vehicles for "laundering" the proceeds of organized criminal activities, and from being perverted to methods of operation commonly associated with "organized crime." That these considerations formed the principal motive for the actions taken by Congress is apparent from the Congressional statement of purpose, as well as from the legislative history. But criminal statutes are necessarily directed at actions, not at individuals. The Congressional response was to make certain patterns of activity punishable as federal crimes, whoever may commit them. If the defendant's conduct can be shown to fall within the range of activities forbidden by the express language of the statute, it is not within the province of the Court to create an exception, merely because a strong argument can be made that the Congressional purpose might have been accomplished by a more narrowly drawn statute.

If, as the defendant argues, application of the RICO and mail fraud statutes to cases involving allegations of repeated acts of official corruption affecting interstate commerce but not involving "organized crime" in the popular sense, proves disruptive to the correct balance between federal and state law enforcement efforts, the remedy must (and no doubt will) be found in the Legislative or Executive Branches of Government, by way of amendment of the statute, or sensitive exercise of prosecutorial discretion. There can be no question about Congress' power to legislate in this field, nor as to this Court's jurisdiction.