**TELEPROMPTER OF ERIE, INC., a corporation, Plaintiff,**

**v.**

**The CITY OF ERIE, a municipal corporation, and its elected officials, officers and agents, the Council of the City of Erie, a legislative body, Larry D. Meredith, President of The Council of the City of Erie, in his representative capacity and as an individual, Erie Telecommunications, Inc., a corporation and Greater Erie Economic Development Corporation, a corporation, Defendants.**

**Civ. A. No. 81–17 Erie.**

United States District Court, W. D. Pennsylvania.

May 11, 1981.

8

William Burke, Gregory Harvey, Philadelphia, Pa., for plaintiff.

Harold Schmidt, Pittsburgh, Pa., John Quinn, Jr., Erie, Pa., for defendant ETI.

David Ungerman, Stephen H. Hutzelman, Erie, Pa., for defendant Larry Meredith.

Thomas Ridge, Erie, Pa., for defendant GEEDC.

John R. Wingerter, Erie, Pa., for defendant City of Erie.

## MEMORANDUM OPINION

KNOX, District Judge.

This suit arises out of a vote by the Council of the City of Erie on November 5, 1980 to award the Erie cable television franchise to Erie Telecommunications, Inc. (ETI). Plaintiff, Teleprompter of Erie, Inc., a Pennsylvania corporation competing for the cable franchise, filed this complaint on January 22, 1981 against the City of Erie, the Council of the City of Erie, Councilman Larry Meredith and two Pennsylvania corporations, ETI and Greater Erie Economic Development Corporation (GEEDC) alleging denial of equal protection and due process by the defendants during the bid procurement and award process. Plaintiff further alleges that the award of the contract to ETI was the result of corrupt influences in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Jurisdiction is predicated on the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended, and RICO, 18 U.S.C. § 1961 et seq. A pendant state claim is also asserted.

Prior to filing this suit in federal district court, plaintiff filed an action in the Court of Common Pleas of Erie County against the City of Erie and Larry D. Meredith on November 6, 1980. (Equity Action No. 159–1980). On November 25, 1980, ETI intervened in that action and on December 5, 1980, all defendants filed preliminary objections to plaintiff's complaint. Argument on those objections was scheduled for February 25, 1981. After deciding that federal court provided a preferable forum, plaintiff filed the instant action on January 22, 1981 and filed a Praecipe to Discontinue the state court action on January 26, 1981. A petition to strike the state court discontinuance by the defendants is still pending before that court.

On March 9, 1981, the City of Erie filed a Motion to Dismiss the instant complaint and on March 10, ETI filed a Motion to Dismiss, to Strike and, in the Alternative, for Abstention in which defendant GEEDC joins. Lengthy arguments were heard on April 7, 1981, all briefs have now been received by the court and the matter is now ready for disposition.

### Factual Background

When passing on motions to dismiss, we must take as true the well-pleaded allegations of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Lasher v. Shafer, 460 F.2d 343 (3d Cir. 1972). In Count I of the complaint, plaintiff alleges that the City of Erie and the City Council awarded the cable communications system contract in a discriminatory, arbitrary and unlawful manner by improperly evaluating plaintiff's proposal, by affording ETI and not plaintiff the opportunity to amend its proposal and to submit an alternative proposal and by failing to grant the award to the best and lowest responsible bidder. Plaintiff alleges that this action was taken in violation of its constitutional rights to due process and equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution. In Count II, plaintiff charges that the corporate defendants and Councilman Meredith conspired in a preconceived scheme to unlawfully award the contract to ETI in violation of plaintiff's constitutional rights. In Count III it is alleged that, as part of this scheme, employees or agents of ETI and GEEDC attended a private fund-raiser for Meredith

on October 20, 1980 and contributed money in exchange for Meredith's favorable exercise of discretion as a public official in violation of RICO. Count IV involves numerous pendant state claims which will rise or fall on the disposition of the first three counts.

Defendants seek dismissal of the complaint on various grounds. They challenge counts I and II, the constitutional claims, for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) contending that plaintiff has no recognized property right in the contract and that the complaint fails to show that the defendants acted under color of state law. Defendants move to dismiss the RICO allegations in count III for failure to allege facts: (1) establishing a "pattern of racketeering activity;" (2) showing the necessary investment facts; (3) establishing that ETI is an enterprise which can be liable under RICO; and (4) establishing that ETI is an enterprise which is part of organized crime.

In the alternative, defendants ask us to invoke the doctrine of abstention and decline to entertain this action, or stay it pending determination in state court of ETI's petition to strike the praecipe for discontinuance. In the further alternative, the corporate defendants move to strike count III of the complaint and the municipal defendants move to strike the entire complaint as verbose, scandalous and impertinent.

### Abstention

It is logical to address the abstention issue at the outset, since if we decline to entertain this suit we can save ourselves considerable effort. Unfortunately, we do not feel that this is a proper case for the exercise of the doctrine of abstention. Abstention is usually ordered on one of three grounds: (1) there exists an unsettled question of state law, the resolution of which by state courts would make unnecessary, or substantially affect, the ultimate resolution of a federal constitutional issue; (2) the controversy involves an issue of unique state concern having broad policy implica-

tions; or (3) to prohibit disruption of an on-going state judicial proceeding. See *Three Rivers Cablevision v. City of Pittsburgh*, 502 F.Supp. 1118, 1122 (W.D.Pa. 1980). Abstention from the exercise of federal jurisdiction is the exception and not the rule, and is only to be invoked in exceptional circumstances to clearly serve an important countervailing interest. It is unclear under which, if any, of these three circumstances defendants think this case falls. They urge us to abstain in order to avoid "duplicative litigation" since the original action is still pending in state court. However, we do not believe that their concern for judicial economy is genuine since the action is still pending in Erie County only by virtue of their efforts to keep it alive. The bulk of plaintiff's allegations involve questions of federal law and implicate state and local laws only as a means of determining the constitutional issues. There is nothing extraordinary or compelling about the state law questions to justify our abstention in this case, nor do we feel that duplicative litigation will result. Therefore, if jurisdiction is properly invoked, we will not abstain from hearing plaintiff's complaint merely because there is a pending petition to strike the state court discontinuance in the Court of Common Pleas of Erie County.

### Property Right

Defendants challenge the sufficiency of counts I and II of the complaint on the grounds that plaintiff has no recognized property right as required by the Fourteenth Amendment. To bring an action within the scope of 42 U.S.C. § 1983, plaintiff must assert and prove that state action unjustly deprived it of a legally protected liberty or property interest. Plaintiff alleges a property interest in the award of the contract as the "best responsible bidder" under the Third Class City Code, 53 P.S. §§ 36901(b) and 36917. Defendants argue that the procedures in the Third Class City Code requiring that contracts be awarded to the best responsible bidder do not apply to the City's award of the cable franchise and therefore cannot give rise to a property right.

**10**

In a highly analogous suit brought by a disappointed bidder for the cable television contract in the City of Pittsburgh, another member of this court carefully analyzed, *inter alia,* whether such a plaintiff had a protected property right in the contract. *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. at 1127–1132. After examining state and local laws regulating the award of the cable franchise, the court determined that plaintiff did have a protected interest in that award. In *Three Rivers,* the court relied on provisions in the City Code and the ordinance governing the terms of the cable contract requiring that the contract be awarded to the "lowest responsible bidder," while at the same time giving the city the right to reject all bids. Therefore, under Pennsylvania law, while the city was not under an obligation to award a cable television contract at all, the court held that if it did award a contract, it must exercise its discretion in a non-arbitrary fashion in determining which bidder was the lowest responsible one. *Id.* at 1130–1131.

Defendants contend that neither of the provisions of the Third Class City Code require competitive bidding under the circumstances of this case. Title 53 P.S. § 36901 provides in relevant part that:

> [a]ll services and personal properties required by any city . . . where the amount exceeds the sum of two thousand five hundred dollars, shall be furnished and performed under written contract, and the contract shall be awarded and given to the lowest responsible bidder . . .

Defendant does not believe that this section is applicable because the award of a cable communications franchise is not a contract for services or personal property *required* by the city. Further, defendants contend that the amount of the franchise does not exceed $2500 since any cable outlets provided to the city will be installed by the cable company free of charge. The Pennsylvania Supreme Court settled defendants' latter argument in *Yohe v. City of Lower Burrell,* 418 Pa. 23, 208 A.2d 847 (1965), by holding that the statutory requirement for competitive bidding in the Third Class City Code

did apply to the award of a contract for the collection of garbage even though it would not cost the city anything since it would involve the expenditure of thousands of dollars of taxpayers' money.

■ Whether cable television is a service "required" by the city is more troublesome. In its most restrictive sense, the word "required" denotes something demanded as necessary and essential to the city. To "require", however, is also defined as "to call for as suitable or appropriate." *Webster's Seventh New Collegiate Dictionary* (1969). It is certain that until the city decided that a cable system was appropriate in Erie, there could not have been such a system. The grant to a corporation of the right to construct a city-wide system of cables along and over its streets and other public ways is an act which can only be done by the sovereign or its authorized agent. *Borough of Scottdale v. National Cable Television Corp.,* 28 Pa.Commw.Ct. 387, 368 A.2d 1323, aff'd 476 Pa. 47, 381 A.2d 859 (1977). In essence, by passing the ordinance authorizing the implementation of a cable system, the city has made a determination that it is a service required by its residents.

The second statute relied upon by the plaintiff is more directly on point, however, and read together, indicate a legislative intent that competitive bidding govern the award of such a franchise. Title 53 P.S. § 36917 states in relevant part:

> [n]o city personal property shall be disposed of by sale or otherwise except upon approval of council by ordinance or resolution . . . . If council shall estimate the sale value to be two hundred dollars or more, the entire lot shall be advertised for sale . . . and sale of the property so advertised shall be made to the best responsible bidder . . . .

Defendant contends that a franchise is not personal property within the meaning of this section since another section of the City Code provides that franchises shall be given only by ordinance and § 36917 allows for the award by ordinance or resolution. *See* 53 P.S. § 36057. We agree with plaintiff

that this is, at best, a strained effort at statutory construction.

■ A franchise, classified as an incorporeal hereditament, is not generally regarded as real property but it is considered property. *Versailles Township Authority of Allegheny County v. City of McKeesport*, 171 Pa.Super. 377, 90 A.2d 581 (1952). Defendants have provided no legitimate reason why a franchise should not be considered property under 53 P.S. § 36917. In construing 53 P.S. § 36901, the other section of the Third Class City Code on which plaintiff in this case relies, the Pennsylvania Supreme Court discussed the policy reasons behind the need for competitive bidding, stating:

> [b]idding requirements are for the purpose of inviting competition to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. *Yohe v. City of Lower Burrell*, 208 A.2d at 850.

This policy strongly supports a finding that competitive bidding should apply to the award of a non-exclusive franchise for cable television in Erie, Pennsylvania. Once the city adopted the City of Erie Cable Communications Franchise Agreement Ordinance and issued Requests for Proposals to interested parties soliciting sealed bids, it was under a statutory obligation to exercise its discretion in a non-arbitrary way in granting the franchise to the "best responsible bidder" in full compliance with the specifications unless the city decided not to make any award under 53 P.S. §§ 36901 and 36917. Therefore, under *Three Rivers Cablevision v. City of Pittsburgh, supra*, plaintiff has sufficiently alleged a property interest in the award of the contract.

## State Action

■ Defendants contend that plaintiff's complaint fails to state a claim under 42 U.S.C. § 1983 because the allegations do not establish conduct under color of state law. Defendants contend that Council President Meredith had no authority to accept money for his vote and therefore this action was taken alone and not under color of state law. It is now established that the Civil Rights Acts do not exclude from their purview the wrongful acts of an official for which the official has no authority. *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965). The misuse of power possessed and made possible only because the wrongdoer is clothed with the authority of state law is action under color of state law within the meaning of 42 U.S.C. § 1983. *Id.* at 80. It is unnecessary for plaintiff to allege that it was the policy of the City Council to accept bribes and the allegations that Meredith, while acting in his official capacity, accepted a bribe in return for his favorable exercise of discretion as a councilman is sufficient to show state action. Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities may be held liable in money damages for constitutional violations committed by their employees only if those actions implement "official policy." Plaintiff alleges in paragraph 9 of the complaint that the city and the council acted in a discriminatory, arbitrary and unlawful manner when they adopted a resolution awarding the franchise to ETI on November 5, 1980. In *Three Rivers*, the court stated that it would be hard pressed to imagine an act that could be more readily characterized as "official policy" than a resolution awarding a cable television contract passed by the City Council in regular session pursuant to specifically granted powers. 502 F.Supp. at 1135. Therefore, plaintiff has sufficiently alleged a cause of action under the Civil Rights Act against Meredith and the City of Erie.

■ Defendants argue that in count II, plaintiff has not sufficiently alleged that defendants had the means to violate plaintiff's constitutional rights. The allegations

in paragraphs 10 and 46 of the complaint state that the corporate defendants and Meredith combined causing Meredith and others on City Council to make an arbitrary and discriminatory award of the franchise to ETI. Defendants are reminded that this is a motion to dismiss and all allegations of plaintiff must be taken as true. We believe that the complaint alleges with sufficient specificity facts which, if proven, would ᴇmake out the elements of such a conspiracy. *Fletcher v. Hook*, 446 F.2d 14 (3d Cir. 1971).

■ Defendants also contend, in the alternative, that Councilman Meredith is immune from suit in his individual capacity and that the City of Erie is immune under the doctrine of legislative immunity. *Three Rivers* addressed the question of immunity and held that the award of the contract was an administrative and not legislative act and the possibility that the administrative act may be clothed with limited good-faith immunity is an affirmative defense and improper at this stage of the proceeding. 502 F.Supp. at 1136, n. 20. We agree.

## RICO

■ In count III, plaintiff charges that Meredith and the employees and associates of ETI and GEEDC were involved in a scheme to bribe Meredith, and that such activity constitutes a violation of RICO, 18 U.S.C. § 1961 *et seq.* Under 18 U.S.C. § 1964(c), private individuals injured in their business or property by violations of RICO may sue in federal district court, and if successful, recover treble damages and attorneys' fees.

Defendants move to dismiss this count for failure to state a claim, pointing to numerous shortcomings in the complaint. The only persuasive argument in favor of dismissal of this count is the failure of plaintiff to allege facts sufficient to show that defendants participated in a "pattern of racketeering activity." Two crucial elements which must be proved by the Government in a criminal prosecution under RICO are (1) defendants association with an "enterprise" and (2) the existence of a "pattern of racketeering activity." Plaintiff has ad-

equately alleged that the defendants are part of an "enterprise," since that term is broadly interpreted to include any individual, partnership, corporation, association or other group of associated individuals that is organized and acting for ostensibly lawful purposes. *United States v. Fineman*, 434 F.Supp. 189 (E.D.Pa.1977).

Proof of a "pattern of racketeering activity" under 18 U.S.C. § 1961(5) requires at least two acts. Plaintiff alleges in paragraphs 40 through 45 of the complaint that defendants' employees and associates attended a fundraiser on October 29, 1980 for the personal benefit of Meredith and that Meredith accepted contributions from these individuals in exchange for his favorable exercise of discretion as a public official. Plaintiff did not indicate how many contributions were made or by which employees or associates. Plaintiff argues that each bribe should be characterized as a separate act and therefore constitutes a "pattern of racketeering activity."

Cases considering this section of RICO in our circuit require a showing of at least two separate instances of such activity. *United States v. Frumento*, 409 F.Supp. 136 (E.D. Pa.1976), *aff'd*, 563 F.2d 1083, *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775. In *United States v. Salvitti*, 451 F.Supp. 195 (E.D.Pa.1978), *aff'd* 588 F.2d 822, the court held that a single, ongoing scheme to defraud by obtaining bribes or kickbacks, which involves a series of unlawful acts, can establish a "pattern" for purposes of RICO and it is not necessary to establish two or more totally independent criminal acts. In *Salvitti*, the defendant was charged with numerous counts of mail fraud in connection with a single scheme to obtain a single bribe. While the court found the question to be a close one, it was persuaded to find a pattern by the fact that the mail fraud charges, in which each mailing constituted a separate offense, were coupled with the bribery charges. *Id.* at 200.

The cases indicate that this requirement was included to insure that RICO was utilized to prevent incidents constituting, or likely to constitute a continuous course of unlawful conduct. The stress is on a *series*

of incidents and schemes which are *ongoing*. The overall purpose of RICO is to rid the American economy and the channels of interstate commerce from the influence of "organized crime," by strengthening the means of preventing money and power obtained from illegal endeavors as are generally associated with organized crime from being used to infiltrate and corrupt legitimate businesses and to subvert and corrupt the democratic process so as to interfere with free competition and burden interstate and foreign commerce. *United States v. Forsythe*, 429 F.Supp. 715 (E.D.Pa.1977), *rev'd on other grounds*, 560 F.2d 1127. We do not feel that the facts alleged in the complaint show a *series* of unlawful acts sufficient to establish "a pattern of racketeering activity" within the meaning of RICO. Even if plaintiff could prove that each and every employee or associate of ETI and GEEDC bribed Meredith at the fundraiser, it would only constitute one single act of unlawful activity. Therefore, we must dismiss count III of plaintiff's complaint.

For all the above reasons, defendants' motions to dismiss are granted as to count III. In all other respects, the motions of defendants are denied. An appropriate order will be entered.