## SMITH ET AL. *v.* UNITED STATES ET AL.

No. A–230.   Decided September 11, 1975

MR. JUSTICE DOUGLAS, Circuit Justice.

Substantial questions may be raised under both the Federal Rules of Criminal Procedure and the Constitution whenever an order is made requiring that the files and records of a federal grand jury be turned over to a state prosecutor.  Such an order was entered in this case by the District Court.  The Court of Appeals for the Ninth Circuit denied a motion to stay the order pending appeal; however, a motions panel of that court granted an emergency stay so that the matter might be presented to me.  I have now heard oral argument in Yakima, Wash., and I have concluded that I should issue the stay.

In 1973 and 1974 a federal grand jury in the Southern District of California conducted a lengthy investigation into the affairs of United States National Bank.  This investigation resulted in multicount indictments against both applicants.  On June 12, 1975, the federal case was

concluded when applicants entered pleas of *nolo contendere* and were sentenced. On August 7, the District Attorney for San Diego County filed a motion in Federal District Court seeking the files and records of the grand jury. That motion, which was opposed by the applicants, has led to the present proceeding.

In a long line of cases the Supreme Court has reaffirmed the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts," *United States* v. *Procter & Gamble Co.,* 356 U. S. 677, 681 (1958). See, *e. g., Dennis* v. *United States,* 384 U. S. 855 (1966); *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395 (1959). Although the Court has affirmed the power of district courts under Fed. Rule Crim. Proc. 6 (e) to order disclosure of evidence presented to grand juries, that Rule has been interpreted to require a showing of "particularized need" or "compelling necessity." See, *e. g., Pittsburgh Plate Glass Co., supra,* at 400. It is a substantial question whether the need cited by the state prosecutor in this case is great enough to justify breach of the grand jury's deliberations. The state prosecutor contends, first, that the grand jury materials will save the State substantial investigatory and prosecutorial resources and, second, that the materials will be generally useful in refreshing the memories of witnesses who appeared before the grand jury. However, it is doubtful whether either of these reasons—which will always be present whenever a State conducts an investigation following a similar one by a federal grand jury—meets the "compelling necessity" standard of Rule 6 (e).

The prosecutor also points out that the California statute of limitations, which is three years for most felonies, see Cal. Penal Code § 800 (1970 and Supp. 1975), will bar prosecution of applicants sometime in 1976. The collapse

of United States National Bank, and presumably the termination of any crimes that applicants may have committed, occurred on October 18, 1973. The prosecutor thus argues that the imminent running of the statute of limitations justifies the turnover order. The collapse of the bank, however, and the initiation of the federal investigation were well publicized. Yet the prosecutor chose to do nothing. Surely a state prosecutor may not demonstrate "compelling necessity" by a state of affairs that his own tardiness has brought about.

Finally, there is a serious question whether applicants can be prosecuted at all under California law. California Penal Code § 656 (1970) forbids prosecution for "act[s] or omission[s]" for which the accused has already stood trial under the laws of "another State, Government, or country." See also Cal. Penal Code §§ 793, 794 (1970). The California Supreme Court has held that a previous federal prosecution acts as a bar, under § 656, to subsequent state prosecution. *People* v. *Belcher,* 11 Cal. 3d 91, 520 P. 2d 385 (1974). It seems likely that a plea of *nolo contendere* would be considered the same for § 656 purposes as a plea of guilty. See, *e. g., North Carolina* v. *Alford,* 400 U. S. 25, 35, and n. 8 (1970). Moreover, the state prosecutor, in his declaration to the District Court, virtually conceded that the California crimes that applicants may have committed are state equivalents to the federal crimes charged in the federal indictment. It is a serious question whether prosecution would thus be based upon the same "act or omission" as the crimes upon which applicants pleaded *nolo contendere* and would thereby be barred under § 656. A substantial question arises whether the requisite showing of need under Rule 6 (e) is satisfied when a state prosecution cannot, under state law, result in conviction.

If the moving parties had been witnesses before the

federal grand jury, serious questions involving the Self-Incrimination Clause of the Fifth Amendment would be involved. No such issue is presented here as to applicants, because they did not testify before the grand jury. Other persons, however, who testified before the grand jury, were granted immunity. Immunity once granted in a federal proceeding may not be nullified by a turnover order obtained by a state prosecutor. *Murphy* v. *Waterfront Comm'n*, 378 U. S. 52 (1964).

The District Court, moreover, might have granted motions to suppress evidence that had been obtained by the grand jury, and if that occurred, it is difficult to see how motions that were won before the District Court can be lost at the instance of the state prosecutor. This Court has held that a witness before a grand jury may not refuse to answer questions on the ground that they are based upon evidence obtained in violation of the Fourth Amendment. *United States* v. *Calandra*, 414 U. S. 338 (1974). However, from the fact that a grand jury may use illegally seized evidence, it does not follow that the evidence may in turn be given to a state prosecutor. *Calandra* was based upon the marginal deterrent value that application of the exclusionary rule to grand jury proceedings would have upon illegal police activity. *Id.*, at 351. In addition, the Court found that application of the exclusionary rule would hinder and disrupt grand jury proceedings. *Id.*, at 349. Neither of those reasons has much force in this case. First, there are no grand jury proceedings to disrupt. Second, a turnover of illegally seized evidence may undermine the deterrent effect of the exclusionary rule to a greater extent than contemplated in *Calandra*. Finally, *Calandra* cannot be read as approving illegal seizures of evidence. The only question before the Court was whether a potentially disruptive challenge to the seizure of evidence

would lie during grand jury proceedings. After a trial court has ruled that evidence was, in fact, the product of unconstitutional police activity, there is no excuse for the continued use of the evidence. There apparently is such a question of illegally seized evidence in this case, although the record before me does not show precisely what the evidence suppressed was and how relevant it might be to the state as well as to the federal charges. It would seem to be a substantial question whether a turnover order should include such evidence.*

Double jeopardy might also preclude state prosecution. That kind of objection may, in time, be resolved upon an appropriate motion before state tribunals. I mention the matter because the Double Jeopardy Clause of the Fifth Amendment was held applicable to the States in *Benton* v. *Maryland,* 395 U. S. 784 (1969). *Benton* may cast doubt upon the continuing vitality of *Bartkus* v. *Illinois,* 359 U. S. 121 (1959), which found that successive state and federal prosecutions upon substantially similar charges do not violate the Double Jeopardy Clause. See also *Abbate* v. *United States,* 359 U. S. 187 (1959).

It was suggested at oral argument that applicants' lawless actions can be curbed only by denying them legal refuge. Yet all constitutional guarantees extend both to rich and poor alike, to those with notorious reputations, as well as to those who are models of upright citizenship. No regime under the rule of law

---

*It was suggested that applicants should seek relief from any oppressive aspects of the turnover order by appropriate motions in the state courts. It seems apparent, however, that even a cursory examination of the federal grand jury materials would likely give the state prosecutor "leads" to information that would result in a permanent loss to applicants of the value of the secrecy of the grand jury proceedings.

could comport with constitutional standards that drew such distinctions.

I do not, of course, pass on the merits of the turnover order, which is presently before the Court of Appeals. Yet these questions seem to me to be so substantial that I have decided to issue the stay. It will remain in effect until the Court of Appeals decides the merits.